Tommy Frank Hare was indicted for unlawfully possessing eleven different narcotic drugs, contrary to the Alabama Uniform Controlled Substances Act. The jury found the appellant guilty as charged, and the trial court set sentence at ten years imprisonment. *Page 1127 
The appellant's attorneys filed a pretrial motion to suppress, which was heard and denied just before trial.
At the suppression hearing Birmingham Detective Sergeant John Cameron Guy, Jr., testifies that, in May, 1977, he obtained a search warrant for the residence located at 1417 Fourth Avenue, West, in Birmingham, from Judge W.W. Stewart, and, immediately thereafter, accompanied by other officers, went to the Hare residence on May 8, 1977, about 1:15 a.m., and knocked on the front door. At first, there was no answer in reply to the officers' knock and announce. After repeating this and sending fellow officers to the rear door of the residence, the front door was opened and Sergeant Guy went in, served the search warrant and arrested the appellant as he was coming out of an upstairs bedroom at his parents' home. They also arrested his brother, Robert Hare, who was observed coming out of another bedroom. Detective Guy stated that he first observed the appellant and the appellant's wife as they walked from an upstairs bedroom into the hallway. He stated that he had gone in the front entrance with Lieutenant Bibb and that Sergeant Trucks and Officer Jim Reed had entered through the rear door of the residence.
Officer Guy indicated that the appellant's mother had belatedly answered the front door, and that, after serving the search warrant, the officers went into the bedroom from which Tommy Frank Hare and his wife had emerged and there found a brown paper bag containing a large number of drugs of various kinds. These drugs were seized pursuant to the warrant and delivered to the State Department of Forensic Sciences for identification and examination.
Sergeant Guy and Sergeant Trucks stated that they had sent a confidential informant to the home of Tommy Frank Hare's parents where, on the evening of May 7, 1977, the source had purchased narcotic drugs from Tommy Frank Hare and returned with a pinkish heart-shaped drug which they believed to be amphetamines. Within a very short time thereafter, the two officers went to the home of Judge Stewart and obtained a search warrant for the Hare residence, based upon the information supplied by the confidential informant and the drugs which were delivered to them shortly before 10:00 on the evening of May 7, 1977.
The appellant's pretrial motion to suppress was overruled.
At trial both Sergeant Charles Trucks and Sergeant John Cameron Guy repeated their testimony concerning the events on the evening of May 7, 1977, establishing the sending of an informant to the Hare residence, the informant's return with the pinkish heart shaped amphetamine capsules, and the subsequent obtaining of a search warrant, based on this information, from Judge Stewart at his home. The two officers then told of going to the Hare residence, knocking several times and announcing their presence and purpose before finally being admitted at the front door by the appellant's mother and serving the search warrant on her. The officers described the residence as a two-story dwelling, white in color, and stated they were admitted to same about 1:10 a.m. on the early morning of May 8, 1977, that shortly thereafter, upon observing the appellant and his wife coming from a bedroom, they went to the bedroom and found the brown paper bag containing the eleven different amphetamine and barbiturate drugs. These drugs were each identified at trial by State Criminalist Arthur Craig Bailey, whose qualifications were admitted by stipulation at trial. Among the drugs found in the brown bag in the bedroom occupied by the appellant were: 48 capsules of a depressant known as ethchlorvynol, 50 capsules of meprobamate, another depressant, 49 capsules of methamphetamine, which is used to control obesity, 156 tablets of methylphenidate, a stimulant, 93 pethidine tablets, which is a pain killer, 178 capsules of pentobarbital, which is designed to induce sleep, 487 tablets of phenobarbital, also a sleeping tablet, and 185 capsules, which were a combination of secobarbital and amobarbital, also a sleeping tablet, and 992 capsules of butalbital. *Page 1128 
Mr. Bailey indicated that all these drugs were controlled items under the Alabama Controlled Substances Act and required the prescription of a registered medical practitioner. Mr. Bailey stated that the substance butalbital was a salt derivative of barbituric acid, and, as such, was found in Schedule Three of the Controlled Substances Act. This was in response to questioning by defense counsel.
Sergeant Trucks was recalled and stated that only the appellant and his brother, Robert, were taken into custody on the early morning of May 8, 1977.
Mr. Bailey, State Criminalist, was recalled and stated that the eleven different types of drugs found at the Hare residence and delivered to him on May 9, 1977, were examined by him at his Birmingham office on July 28, 1977, and that no one else had custody of the drugs other than himself.
The appellant's motion to exclude the evidence, made at the close of the State's case, was overruled.
The appellant's sister, Barbara Hare, testified that she was a school teacher in Birmingham and it was necessary for her mother to have several different types of drugs as a result of surgery in 1975, in which part of her intestines were removed. She admitted on cross-examination, however, that she was not familiar with some of the drugs exhibited to her at trial.
The appellant's wife, Daphne Lynn Hare, testified that she and her husband were in bed asleep when his brother, Robert, banged on their bedroom door and stated that some police officers were downstairs and to get up. She stated that her husband was just partially dressed and walked out in the hallway where the police officers arrested him.
The appellant's mother, Mrs. Dorothy Hare, testified that she had a son named Robert, a son named Tommy, and a son named Johnny, and a daughter named Barbara. She indicated that she usually slept downstairs in her home after surgery in 1975 and she had taken some medicine and was sound asleep when she heard some banging on her front door. She stated she finally opened the door and that her son, Robert, ran to her and asked her not to open the door unless the officers had a search warrant. She stated that her son Tommy and his wife were still upstairs when a number of uniformed officers came into the home with a search warrant and that later she saw them leave with a large sack. She stated that she had a prescription for certain drugs which were needed as a result of extensive surgery.
 I
Appellant first argues that the State did not sufficiently prove the allegations of the indictment in that a substance known as "butalbital" was not properly shown to be on the controlled substances list, therefore, his motion to exclude should have been granted.
Careful examination of the record in this cause and the testimony of Mr. Arthur Craig Bailey clearly establishes that he stated at trial that "butalbital" was one of the thirteen different narcotics or controlled substances found in the bag which was brought to him, and that the same was a "controlled substance" under Schedule Three of the Code of Alabama 1975, §20-2-27 (a)(2)(a). Clearly, therefore, the State properly proved the allegations of the indictment, hence, the trial court properly overruled the appellant's motion in this respect.
 II
The appellant next asserts that the affidavit and warrant obtained from Judge Stewart were faulty in that such was a "nighttime warrant" and there was no positive averment that drugs were present at the specified home.
Examination of the affidavit, executed before Judge Stewart, reveals that the affiant stated twice that he had "probable cause" to believe that drugs or narcotics were present at the home of Tommy Frank Hare and in his possession at 1417 Fourth Avenue, West, which was the residence of the appellant's parents. This court is of the *Page 1129 
opinion that there was a sufficient specific averment, as required by the provisions of the Code of Alabama 1975, §15-5-8. We believe that Dean v. State, 54 Ala. App. 270,307 So.2d 77 (1975), is dispositive of the issue here presented.
 III
The appellant finally asserts that the State did not sufficiently prove the appellant to be in possession of the drugs seized at his parent's home on the night of May 7-8, 1977.
Two officers testified that they saw the appellant walk from the bedroom door, partially clothed, and the appellant asked permission to return to get his shoes and shirt. As the appellant did so, the brown sack inside the bedroom was in plain view of the officers and was observed by them. This was the bedroom in which the appellant and his wife were sleeping and which the appellant's mother had indicated was the appellant's bedroom.
We believe that the State, therefore, properly proved possession of the seized drugs and that the trial court properly submitted this issue to the jury for its determination. McHellen v. State, 351 So.2d 689 (Ala.Cr.App. 1977), and cases therein cited.
We have carefully examined this record and find same to be free of error. The judgment is therefore
AFFIRMED.
All the Judges concur.