GARDNER F. GOODWYN, Jr., Retired Circuit Judge.
The appellant, Tommy Edward Pyles, was indicted by a Pike County Grand Jury at its January 1982, term, charging that he “did knowingly sell, manufacture, deliver, or bring into this state, or was knowingly in actual or constructive possession of more than one kilo or 2.2 pounds of cannabis, in violation of 20-2-80 of the Code of Alabama.”
This section, as a part of Article 4A, became effective May 28, 1980, and defines the offense of trafficking in cannabis and sets the punishment therefor.
An arrest warrant was issued for appellant, and trial was held in the Circuit Court of Pike County, Alabama, before a jury, which returned a verdict of guilty as charged.
After a presentence hearing, the appellant was sentenced to a term of imprisonment of four years, but no fine was imposed.
The case of the State was based upon the testimony of an accomplice of the appellant, and the testimony of a police officer and an expert witness. The appellant called no witnesses in his defense.
The accomplice, Buster Griffin, testified, in substance, that he, his wife and sister, the appellant, and three other men left Pike County on September 4, 1981, in two automobiles — a blue colored Opel and a green colored Chevrolet station wagon — to go to Falls City, Nebraska, for the purpose of obtaining marijuana for later sale and distribution in Alabama.
They arrived in Falls City at approximately 5 p.m. the following day and checked into a motel. They purchased at a local grocery store a quantity of garbage bags and gloves for use in containing and picking the plant, which they harvested from 9 p.m. that evening to 3 a.m. the next morning in a wild field about three miles from town. They picked about nine bags that night, and the appellant actively participated in the operation. Further harvesting was interrupted by rain, and they left Falls City on Monday, September 7, for Maryville, Missouri, with the harvested bags. While in Falls City, the parties took several photographs of one another and their vehicles. (These were identified and introduced into evidence during the trial.)
*418 In Maryville, they gathered more marijuana, bringing the total to seventeen bags totaling about 350 to 400 pounds.
On Wednesday, September 9, they returned to the home of the witness near Troy, Alabama, arriving about 4:30 or 5 a.m. on Thursday the 10th. They unloaded the two vehicles and carried the bags into his house. They turned on the front porch light to aid in unloading, and the appellant and the other men carried the bags into the house. The witness and his wife remained at their home and went to bed after the unloading. All the others, including the appellant, left the area, supposedly to go to their homes. Before separating, it was agreed that they would come back the next day about 1 p.m.
The witness further testified that the appellant did not live at the home of the witness and did not have any ownership interest in the house and was not present when the officers raided his home that same Thursday and seized the marijuana.
He further testified that on the trip back to Alabama the auto in which the appellant rode carried marijuana; and this was marijuana that they had harvested and brought back to Alabama and which was seized in the raid. He did not know whether the appellant returned to the house at 1 p.m. the next day because by then the witness was in jail.
The witness testified that he had pleaded guilty to the charge against him, but no one had promised him anything.
The next witness, Grady Reeves, testified in substance that he was Assistant Chief of Police of the Troy Police Department and a criminal investigator with the department. On September 10, 1981, at 4:47 a.m., he was a stakeout in a ditch on the roadside across from the residence of Buster Griffin. At that hour a blue Opel and a 1971 green Chevrolet station wagon pulled into the front yard of Griffin’s house. Several individuals got out of the vehicles and began to carry some large, green, plastic garbage bags into the residence. He recognized these individuals as appellant, Buster Griffin, who lived there, Michael Lewis, Ronnie Robert Smith, Tommy Mount, Liz Griffin, and Vera Griffin. He knew the appellant prior to this time and saw him carrying the bags — roughly ten to thirteen in number — into the house from the cars. The bags were filled with some type of bulky material, but at that time he could not see into the bags and did not know for an absolute positive fact that they contained marijuana, but it was his opinion that he had probable cause to believe that marijuana was in the bags.
After observing this he left his stakeout position and obtained a search warrant for the residence of Buster Griffin and returned on the same day with several other officers and conducted a search under the warrant. Seventeen large, plastic bags filled with marijuana were found in the house. Photographs and measurements were taken, and labels were affixed. Total weight of the bags was 420½ pounds. A sample from each bag was delivered to Joseph Saloome of the Enterprise State Crime Laboratory. The appellant was not present when the search was conducted.
Joseph Saloome testified as a qualified expert that the samples delivered to him were marijuana, the scientific name of which-is cannabis setiva, and it is a controlled substance of the Alabama Uniform Code.
As to the legality of the ruling allowing the marijuana to be admitted into evidence, the appellant was without standing under the Fourth Amendment to raise the question in the trial court of the legality of the search of Buster Griffin’s house and the seizure of the marijuana therein.
In order to raise this question, he had to show that he possessed a legitimate expectation of privacy from governmental invasion of the area that was searched. Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). This he did not do. He did not live at the Griffin house, nor did he have any right, title, or interest therein. He was not present when *419 the search was conducted, and he made no claim to any proprietary interest in the goods that were seized.
Under these facts, there was no error in denying the appellant’s motion to suppress the evidence and in overruling his objection to the admission into evidence of the seized goods. Collier v. State, 413 So.2d 396 (Ala.Cr.App.1981), aff'd, 413 So.2d 403 (Ala.1982); Davidson v. State, 48 Ala.App. 446, 265 So.2d 888 (1971), cert. denied, 289 Ala. 741, 265 So.2d 897 (1972).
Moreover, the search warrant was issued upon probable cause and was valid, as disclosed by the affidavit given by Officer Reeves in support of the warrant.
The affidavit was, in substance, that on September 5, 1981, Saturday, a confidential informant told the police department that Buster Griffin and others were en route to Nebraska to obtain a large quantity of marijuana to be brought back to Griffin’s house for storage until it could be sold. They were driving a green Chevrolet station wagon and a blue Opel. The individuals going were known users and dealers in marijuana, which had been observed inside Griffin’s house on several occasions. The trip had been discussed with the informant by these individuals.
The affidavit further stated that on the following day, September 6, 1981, the Narcotics Division of the Nebraska State Police informed the department that surveillance was being maintained in Falls City, Nebraska, of a blue Opel and a green Chevrolet station wagon of designated Alabama license tags. The occupants had bought at a local grocery store an unusually large quantity of plastic garbage bags and gloves. Marijuana grows wild in that area, and the common method of illicit operation is to pick it and pack it in such bags. Further information from the Narcotics Division was that the occupants had checked into a local motel under the name of Buster Griffin. Surveillance was maintained until 10:30 p.m., Monday. During this time, the vehicles were followed to local marijuana fields, and conversations were overheard in the motel rooms of the suspects as to how much marijuana had been gathered and of the odds against being “busted” on the return to Alabama. The suspects checked out of the motel at 10:30 a.m., Monday, and headed south. The affidavit further stated that a check of the license tags furnished by the Nebraska Narcotics Division revealed the station wagon was registered to Ronnie Smith, Troy, Alabama, and the Opel to Vera Griffin, Troy, Alabama.
The affiant, Officer Reeves, further stated in the affidavit that on surveillance of Griffin’s house, he observed at 4:47 a.m., Thursday, September 10, 1981, two vehicles, previously described, arrive at the house, and the occupants began to carry no less than twelve large, green plastic garbage bags into the house. The bags appeared to be filled with a bulky type material. The house was known to be the residence of Buster Griffin and his wife, both of whom were recognized among those who were carrying the bags into the house.
This affidavit, upon which the search warrant was issued, includes information from other law enforcement officers and the personal observations of the affiant himself, a police officer, and is sufficient as to reliability and specificity to establish probable cause. Davis v. State, 333 So.2d 168 (Ala.Cr.App.1976); Keller v. State, 54 Ala.App. 127, 305 So.2d 402 (1974).
The legality of the search warrant and the seizure thereunder is another ground, besides the lack of standing of the appellant to raise the issue, for upholding the trial court in overruling the appellant’s motion to suppress the evidence and the objection to the admission into evidence of the seized goods. Davis, supra; Keller, supra.
The appellant urges error in the overruling of his objection to the introduction of this affidavit into evidence, citing Loggins v. State, 52 Ala.App. 204, 290 So.2d 665 (1974).
But the appellant during cross examination of the affiant Reeves brought out portions of the affidavit before the jury. This was done by asking the witness several questions concerning specific state *420 ments—and the absence of statements—in the affidavit. This action authorized the State to introduce the affidavit in its entirety-
When one party puts into evidence part of a conversation, document, or transaction, the opposing party is entitled to introduce the whole of it. Logan v. State, 291 Ala. 497, 282 So.2d 898 (1973); Flournoy v. State, 34 Ala.App. 23, 37 So.2d 218 (1948), cert. denied, 251 Ala. 285, 37 So.2d 223 (1948); Bridges v. State, 26 Ala.App. 1, 152 So. 51 (1933), cert. denied, 228 Ala. 72, 152 So. 54 (1934), cert. denied, 292 U.S. 633, 54 S.Ct. 718, 78 L.Ed. 1487 (1934).
There was no error in allowing the State to introduce the affidavit in its entirety under these circumstances.
The appellant’s motions to exclude the State’s evidence and for a new trial raise the question of whether there was corroborative evidence of the testimony of the accomplice Buster Griffin sufficient to support a verdict of guilt.
Section 12-21-222, Code of Alabama 1975, states that conviction of a felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence is insufficient if it merely shows the commission of the offense or the circumstances thereof.
The corroborative evidence which is necessary does not have to be sufficiently strong in itself to support a conviction, but it must be of a substantive character and must be inconsistent with the innocence of the accused and must do more than raise a suspicion of guilt. Thompson v. State, 374 So.2d 388 (Ala.1979); Andrews v. State, 370 So.2d 320 (Ala.Cr.App.1979), cert. denied, 370 So.2d 323 (Ala.1979).
The testimony of Officer Reeves and the expert witness Saloome, taken together, tended to place the appellant in possession of the controlled substance, which constitutes a crime if knowingly done. Their testimony tended to connect the appellant with the commission of the offense, as that expression in § 222, supra, is defined.
The corroborative evidence was sufficient to satisfy the statute, and the rulings of the trial court on this issue were free of error. Andrews, supra; Thompson, supra.
We have examined the record and we find no error that requires reversal of the judgment, but we remand the cause for proper sentencing.
Section 20-2-80(l)(a) requires imposition of a fine of $25,000 in addition to the mandatory minimum term of imprisonment of three calendar years when conviction is had under such subsection. The trial judge was required to sentence the appellant to pay a fine of $25,000 in addition to the sentence of four years imposed by him.
Section 80(1) provides that if the quantity of cannabis involved:
“a. Is in excess of one kilo or 2.2 pounds, but less than 2,000 pounds, such person shall be sentenced to a mandatory minimum term of imprisonment of three calendar years and to pay a fine of $25,000.00.”
This cause is remanded for imposition of a fine in compliance with the above section.
The judgment of guilt is hereby affirmed, but the cause is remanded for proper sentencing.
The foregoing opinion was prepared by the Honorable GARDNER F. GOODWYN, Jr., Retired Circuit Judge, temporarily on duty on the court pursuant to § 12-2-30(b)(6), Code of Alabama 1975; his opinion is hereby adopted as that of the court.
REMANDED FOR PROPER SENTENCING.
All the Judges concur.